United States District Court
Northern District of California

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ANTHONY MILANO,

    Defendant.

Case No.: CR 13-00366-JSW (KAW)

DETENTION ORDER

## I. BACKGROUND INFORMATION

Defendant Anthony John Milano is charged in an indictment with a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm).

Defendant initially appeared before the undersigned on July 11, 2013, and was charged with the instant offense. On that date, Defendant was remanded to custody pending a detention hearing scheduled for July 18, 2013. Pretrial Services prepared a full bail study and recommended that Defendant be detained. On July 18, 2013, the Court conducted the detention hearing. Defendant was present, in custody, and represented by Ellen Leonida of the Federal Public Defender's Office. Assistant United States Attorney Cynthia Frey appeared on behalf of the Government. For the reasons stated below, the Court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle

that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

The indictment alleges that on or about March 21, 2013, the Defendant, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, unlawfully and knowingly possessed a firearm and ammunition, specifically, a Ruger LCR 38 Special, serial number 54066062, and five rounds of .38 caliber Special GFL ammunition, five

rounds of .38 caliber Special R-P ammunition, one round of .38 caliber Special Federal ammunition, two rounds of .45 caliber Winchester Auto ammunition, and one round of 9mm Lugar RP ammunition, in and affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1). The Defendant is charged with a serious offense, involving both a substantial amount of a controlled substance, paraphernalia used to intravenously inject and smoke drugs, and a fully loaded firearm that was reported stolen.

At the hearing, the Government proffered that while performing a probation search at Defendant's mother's house, officers found 45 methadone pills[1], syringes, a meth pipe, a fully loaded 38, and a magazine for a Glock. The firearm was reported stolen from Danville. The firearm had 14 rounds of ammunition. The Defendant had $700 on his person even though the Defendant had not been gainfully employed in two years. The Defendant was with his significant other, Kellie Marshall, at the time of the arrest.

Defendant's possession of a loaded firearm suggests that he may have a propensity to be violent and pose a danger to the community. Therefore, the nature and circumstances of this offense weigh in favor of detention.

The loaded firearm, drugs, and paraphernalia were all found in Defendant's bedroom. Defendant's significant other reported that she and the Defendant were the only two people who stayed in the bedroom. Accordingly, the weight of the evidence weighs in favor of detention.

**B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 27 years old. He was residing with both of his parents for a year in Antioch, California, prior to his incarceration. He has resided at his parents' residence intermittently his entire life. The Defendant's mother, Ms. Milano, stated that Defendant moved out of her residence in Antioch, California, two weeks prior to his arrest, to go live with his friend.

---

[1] Although the Government stated that the Defendant was in possession of 45 methadone pills at the time of the arrest, Pretrial Services reported that according to Special Agent Mario Huelga of the Department of Homeland Security (DHS), there were approximately 400 pills of methadone found, along with syringes, firearms, and ammunition.

DETENTION ORDER
CR 13-00366-JSW (KAW)                          3

Defendant has three siblings, one residing in New York and the other two in Merced, California. The Defendant has never been married, but he has been in a relationship with Kellie Marshall for one year. The Defendant has no children.

Defendant obtained his high school diploma from Pittsburg Adult School in 2008. Defendant stated he is financially supported by his parents; however, his mother reported that the Defendant supported himself financially. She reported that the Defendant was buying and selling gold and "other stuff" for a living. The Defendant stated he has been unemployed for two years; however, he has sporadically helped his father with land survey work. Defendant has worked as a land surveyor for his father's company, Terra Firma in Antioch, California, from 2004 to 2011. Defendant has also worked as a laborer for Top Shelf in Brentwood, California, from 2003 to 2004 and as a kitchen worker for Aladino's Pizza, in Antioch, California from 2000 to 2003.

Defendant has travelled internationally to Italy and other Western European countries for one month in 2002; Mexico for one week in 2003; and Italy with his parents for three weeks in 2005. Ms. Milano reported that she has possession of Defendant's expired passport.

Defendant does not suffer from any history of mental health conditions and has never received any mental health treatment. Defendant reported he has consumed alcohol socially since he first tried it at the age of 17. The Defendant reported he experimented with marijuana and cocaine while in high school. He also stated he was prescribed Norco for one year after a snowboarding accident in 2003, and he started taking non-prescribed pills such as Methadone and Oxycodone in 2011, with his last time being eight months ago. The Defendant reported he has never received any substance abuse treatment, but he is open to receiving treatment. Defendant's mother indicated that Defendant voluntarily checked himself in at Teen Challenge for substance abuse treatment, six to seven years ago. She stated he irregularly attended the program for six months.

Officer Tina Martinez of the Contra Costa County Probation Department reported Defendant has a total of three probation revocations since he initially started his period of probation with the county on March 27, 2012. Officer Martinez stated the probation violations

DETENTION ORDER
CR 13-00366-JSW (KAW)                                4

were, for Defendant's drug use and failure to stay in contact with his probation officer; failure to stay in contact with his probation officer; and arrest for possession of drug paraphernalia.

Defendant's criminal history suggests that the Defendant is not amenable to supervision as he has repeatedly violated his probation with crimes similar to the one at issue. In 2009, Defendant was convicted of a misdemeanor for theft and sentenced to six days in jail. In January 2011, Defendant was convicted of Possession of a Controlled Substance While Armed and sentenced to 120 days in jail with three years of probation. Just seven months later, Defendant violated his probation when he was convicted of Possession of Drugs and Possession of Methamphetamine. He was sentenced to three years of probation and 24 days in jail. Defendant was on probation when he allegedly committed the instant offense.

### C. Risk of Nonappearance

Defendant offered his mother, grandmother, and significant other as proposed sureties. Defendant's mother, Lisa Milano, is willing to assist the Defendant with bail by cosigning an unsecured appearance bond as she does not have any cash or property to post. Ms. Milano has been employed as a part-time sales clerk with a jewelry store for over three years and earns a monthly income of approximately $700. Ms. Milano was unwilling to allow Defendant to live with her and unwilling to serve as a third party custodian. She also wanted to keep her current address private because some of Defendant's acquaintances broke into her previous residence and stole some of her property. At the hearing, however, she clarified that she loves and supports Defendant.

Defendant's grandmother, Antoinette Daniele, is willing to cosign an unsecured appearance bond and she is willing to serve as a third party custodian. However, she is unable to allow the Defendant to reside at her current residence as it is in short sale status, and she will be moving to another residence in the near future. Ms. Daniele stated she has an IRA account worth approximately $148,000; however, she is unwilling to post that amount of money. She is living with the following monthly sources of income: $850 payments from her IRA account; approximately $1,200 in a social security; and $350 in employment income.

DETENTION ORDER
CR 13-00366-JSW (KAW)                          5

Defendant's significant other, Kellie Marshall, is willing to assist the Defendant with bail by cosigning an unsecured appearance bond, and she is willing to post $600 to $700 in cash. She is also willing to serve as a third party custodian. Ms. Marshall indicated she has been in a relationship with Defendant for 14 months but has known him for years. Ms. Marshall is currently employed as a part-time tutor and earns approximately $600 per month during the school year and $1,200 during the summer. She is currently pursuing a degree in Biology at the University of California, Davis. Ms. Marshall was at the residence where the Defendant was arrested for the instant offense. The police report stated that Ms. Marshall was in the same bedroom where there were syringes, drugs, and firearms allegedly found by the police officer who searched the house. She was arrested and cited for Use/Under the Influence of a Controlled Substance. Because she has allegedly been involved in criminal activity with Defendant and was with Defendant at the time of the instant offense, the Court finds that she is not a suitable surety.

Factors that suggest the Defendant may pose a danger to the community include the violent nature of the instant offense— felon in possession of a stolen firearm—and Defendant's prior theft, weapons, and drug-related arrests and convictions. Additionally, Defendant has a history of substance abuse. He has no viable place to live and no viable third-party custodian. In addition, Defendant has violated his probation on three occasions, showing that he is not amenable to community supervision. Accordingly, the Court finds that Defendant poses a risk of danger to the community that cannot presently be mitigated through the imposition of conditions of release.

Factors that indicate Defendant poses a risk of flight include: his lack of stable residential history; his previous international travel; his apparent lack of employment; his failure to stay in contact with his probation officer; and his admitted substance abuse history. Also, DMV records reflect that the Defendant's driver's license is currently suspended because of a Failure to Appear/Pay Fine in court. Mitigating factors include Defendant's lengthy history of residence in this District; his familial ties to this District; and his lack of any mental health issues. The Court finds that because Defendant would not have a viable place to live or custodian if he was released, the risk of flight cannot presently be mitigated through the imposition of conditions of release.

DETENTION ORDER
CR 13-00366-JSW (KAW)                                    6

Should Defendant find a suitable place to live, and a suitable surety, he may ask the Court to reopen the issue of detention at that time.

### III. CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and a risk of flight, and that there is no condition or combination of conditions that will reasonably assure the safety of the community and Defendant's appearance.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: July 26, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge